UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARITA L. MYLES,                    )
                                    ) No. CV-04-431-CI
            Plaintiff,              )
                                    ) ORDER DENYING PLAINTIFF'S
v.                                  ) MOTION FOR SUMMARY JUDGMENT
                                    ) AND DIRECTING ENTRY OF
JO ANNE B. BARNHART,                ) JUDGMENT FOR DEFENDANT
Commissioner of Social              )
Security,                           )
                                    )
            Defendant.              )
                                    )

    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 18), submitted for disposition without oral argument on August 8, 2005.  Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant.  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

    Plaintiff, who was 44-years-old at the time of the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

administrative decision, protectively filed her third[1] application for Supplemental Security Income benefits on January 4, 2001, alleging onset as of July 1, 1992, due to memory loss, headaches, arthritis, asthma and poor vision. (Tr. at 121.) Plaintiff completed the tenth grade and never received her GED. She can read, write, and do simple arithmetic. (Tr. at 422-423.) Plaintiff had past work experience as a clerk in a convenience store and cashier. Following a denial of benefits and reconsideration, a hearing was held before ALJ Paul L. Gaughen. The ALJ denied benefits; review was granted by the Appeals Council and the cause remanded for consideration of new evidence of cervical impairment. Following a second administrative hearing, the ALJ denied benefits. Review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

### ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff had not engaged in substantial gainful activity. He further found she had severe impairments, including Type II diabetes (without retinopathy), degenerative disc disease (secondary to old trauma at L5), mild chondromalacra with

---

[1]Plaintiff previously filed an SSI application on November 20, 1995, which was denied on initial review. She filed a second application on October 3, 1996; that application was denied and an unfavorable administrative decision was issued on September 21, 1998. There is no challenge to the ALJ's finding that good cause was not shown to permit reopening of the prior applications. (Tr. at 48.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 2

associated increase in Q angles, affective and personality disorders and probable learning disorder nos, but those impairments did not meet the Listings. (Tr. at 56.) The ALJ found Plaintiff's allegations of disability were not fully credible. He concluded her residual capacity permitted her to perform light work with additional mental limitations. The ALJ concluded Plaintiff was unable to perform her past relevant work, but could work as a document preparer, final assembler, and type copy examiner. (Tr. at 63.) Thus, the ALJ concluded Plaintiff was not disabled.

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) erroneously relied on the testimony of the consulting medical expert without properly rejecting the findings and opinions of the treating and examining physicians; (2) and did not properly reject the testimony of the lay witness, Plaintiff's daughter and care giver. Additionally, Plaintiff contends new evidence presented to the Appeals Council supports the opinions of the examining mental health experts and provides a basis for more severe mental limitations.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 4

## OPINIONS OF TREATING AND EXAMINING PHYSICIANS

Plaintiff contends the ALJ improperly relied on the testimony of the consulting medical expert and failed to properly reject the findings and opinions of the examining mental health experts, Drs. Rosekranz and Pollack.  Additionally, she contends the ALJ did not properly reject the opinion of the treating physician, Dr. Lahtinen, who limited Plaintiff to sedentary work. Defendant asserts the ALJ properly considered the medical evidence and appropriately rejected the findings of Drs. Pollack and Rosekranz.

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and

supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.   Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.   If the opinion of a treating or examining physician is not properly rejected, it must be credited as a matter of law. *Lester*, 81 F.3d at 834.

1.  Mental Health Impairments

Plaintiff contends the ALJ did not properly reject the findings of Drs. Rosekranz and Pollack. The ALJ concluded Plaintiff had severe affective and personality disorders and (probable) learning disorder nos. (Tr. at 56.) Based on these impairments and relying on Dr. Bostwick's testimony, he concluded Plaintiff would need regular and predictable work hours, could not persistently interact socially, collaborate or exchange information with the public, but could greet the public in a perfunctory manner. (Tr. at 58.) She also was limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the public, and respond appropriately to complex changes in the work setting. Additionally, the ALJ concluded Plaintiff would have a slight limitation in working independently and learning new tasks, but she could perform adequately at a production rate speed.

The ALJ rejected the opinions of Drs. Rosekranz and Pollack for

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 6

the following reasons:

> Exhibit B-3F [Dr. Rosekranz's assessment] is another public assistance form for use by the Department of Social and Health Services.   The report's findings are not supported by reference to standardized testing, nor is the maker of the report a treating source within the meaning of the regulations.  The findings are not supported by, or consistent with, the more detailed report of consultative examination at Exhibit B-25F [Dr. Toews].  Additionally, the medical expert's testimony does not support or corroborate the information contained in the DSHS report of psychological impairments and limitations at Exhibit B-3F.

> The undersigned [h]as also assigned little weight overall to Exhibit B-7F [Dr. Pollack] because the bulk of the medical evidence simply fails to support the diagnosis of dementia.  Notably, the medical expert, Dr. Bostwick, did not endorse this diagnosis nor does the other examining psychologist in Exhibit B-25F endorse it.  Because of this conflict, the undersigned asked the medical expert to explain her non-exertional/psychological impairments, as outlined above.  It is noted that if she were...impaired as significantly as Dr. Pollack indicated, then it would appear ... she would have ongoing treatment.  The undersigned also notes that both clinicians indicated some level of over-reporting in the MMPI test results.  Also noteworthy is the fact that the examining physicians do not note symptoms of dementia in their reports of examinations at B-11F [Dr. Gularte], B-12F [Dr. Bagby], B-18F [Dr. Walchak] and B-20F [Holy Family ER], p.2. These doctors appear to have given thorough examinations, and do not reflect reports of problems to support the diagnosis of the psychologist at B-7F.

(Tr. at 60.) These reasons are specific and legitimate; the question is whether they are supported by the record.

Exhibit B-3F, completed by examiners Donald Crawford and Dr. Rosekranz, was supported by medical tests including the WASI, which resulted in a full scale IQ score of 71 (Tr. at 205); MMPI-2 results which indicated a code type of 0-2 (very conventional and avoidant of interaction with others) with over-reporting of symptoms (Tr. at 210); and the Hamilton Beck Depression Scale results which indicated a 53% probability of work impairment due to depression.  (Tr. at 207.)  Trails Tests A and B were within normal limits.  (Tr. at

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

212.) Dr. Rosekranz diagnosed dysthymic disorder, personality disorder with borderline and schizotypal features (Cluster A and B features) and borderline intellectual functioning. (Tr. at 206.) Plaintiff was found to be chronically mentally ill and the MACE malingering scale was within the normal range. (Tr. at 208.) It was recommended Plaintiff be placed on SSI benefits. Contrary to the ALJ's findings, there were tests to support the residual functional capacity. Additionally, the findings of a mental health team under the supervision of a physician are entitled to weight and cannot be rejected because a team member is not a physician. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) and *Ghokassian v. Shalala*, 41 F.3d 1300 (9th Cir. 1994).

However, there is an exception to the *Lester* rule that this court must credit Dr. Rosekranz' opinion as a matter of law. If the opinion of the claimant's treating or examining physician is contradicted, and the second opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis added) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (ALJ need not give specific, legitimate reasons for disregarding treating physician's opinion, which did not rest upon any objective findings, in favor of nontreating physician's opinion, which did rely upon objective findings). Here, there is sufficient evidence, inconsistent with and independent of Dr. Rosekranz' opinion (an examining physician), to support the ALJ's decision.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 8

Because examining physician Dr. Toews relied on "independent clinical findings" in formulating his medical opinion, the ALJ was permitted to credit examiner Dr. Toews' opinion over that of examiner Dr. Rosekranz. *Andrews*, 53 F.3d at 1041 (it is solely province of administrative law judge (ALJ) to resolve conflict between inconsistent independent clinical findings).

The ALJ, relying on the testimony of Dr. Bostwick and Dr. Toews' examination, also gave little weight to Dr. Pollack's opinion because the medical evidence failed to support a diagnosis of dementia. (Tr. at 60.) Dr. Pollack diagnosed dysthymia and dementia, nos, due to general medical condition following brain surgery for Chiari Malformation. (Tr. at 264.) He also concluded she was markedly limited in her ability to maintain attention and concentration, perform activities within a schedule, complete a normal workday and week without interruption and moderately limited in her ability to set realistic goals. (Tr. at 265-266.) Dr. Pollack reiterated that diagnosis notwithstanding a malingering diagnosis by Dr. Debra Brown. (Tr. at 269, 299.)

The ALJ noted Plaintiff had not had mental health treatment or counseling which he concluded would have been recommended if dementia were present, and other medical providers (Holy Family ER, Dr. Bagby, Dr. Walchak, and Holy Family ER) had not referenced dementia during their treatment and examinations. These findings are supported by the record. Additionally, Dr. Pollack's diagnosis of dementia was not corroborated by examinations performed by Drs. Brown or Toews. Finally, the consistent evidence of malingering, over-exaggeration, and poor effort is sufficient to call into question the dementia diagnosis.

**OPINION OF CONSULTING PHYSICIAN**

The ALJ relied on the opinion of Dr. Bostwick, the consulting medical expert who testified at the hearing. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831 citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831 citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating

physicians. *Andrews*, 53 F.3d at 1039.

Dr. Bostwick testified Plaintiff suffered from a depressive disorder, probable mild learning disability, and personality disorder with cluster C traits (avoidant, dependent and obsessive-compulsive). He rejected a finding of cluster B traits and the diagnosis of dementia. He noted several references to malingering and two invalid MMPIs. (Tr. at 56.) He concluded the finding of borderline intellectual functioning, inconsistent with a second intellectual assessment, may have been due to situational issues or diminished effort. Dr. Bostwick found Plaintiff would have only mild limitations with respect to activities of daily living; mild restrictions as to social functioning; mild limitations as to concentration, persistence or pace, rising to moderate if there was emotional distress or conflict; and no episodes of decompensation. These findings were amplified with a Medical Source Statement that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the public and respond appropriately to complex changes in the work setting. (Tr. at 392, 393.)

Here, there is evidence of malingering and invalid MMPI scores throughout the medical record. (Tr. at 299, 366, 261, 415.) Additionally, Dr. Bostwick's opinion is consistent with that of examining physicians, Drs. Toews and Brown. Dr. Toews concluded Plaintiff's global assessment of functioning (GAF) after her surgery was 65-70, indicative of only mild symptoms. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995). The

opinion of an examining physician such as Dr. Toews[2], when supported by objective medical tests, is substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Thus, Dr. Bostwick's opinion is supported by other evidence in the record.

2. Physical Impairments

Plaintiff also contends the ALJ improperly concluded she could perform light work without providing sufficient reasons for rejecting the opinion of the treating physician, Dr. Lahtinen, who concluded Plaintiff was limited to sedentary work or totally disabled. The ALJ rejected his opinion for the following reasons:

> Exhibit B-4F, pp. 1-6 [Dr. Lahtinen's RFC findings dated June 2000 (sedentary work), February 2000 (sedentary work), March 2001 (sedentary work)] is shown to be (from the fact of the documents) reports compiled for public assistance eligibility purposes for use by the Department of Social and Health Services. The findings of the first of these reports do not appear to be supported with reference to standardized medical testing or examination results. Further, the duration given for less than sedentary exertion [Dr. Lahtinen's RFC findings dated February 2002] was 16 to 20 weeks only. [Tr. at 329.] Additionally, it was noted that she needed vocational rehabilitation and could possibly return to work. Therefore, the report would not show disabling impairments that would meet the duration requirements.

--------------------------------

[2]Plaintiff contends the opinion of Dr. Toews should be rejected because his position as a consultant for the agency impairs his objectivity and presents a conflict of interest in derogation of 20 C.F.R. § 404.1519q. (Tr. at 202.) "[T]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Lester v. Chater*, 81 F.2d 821, 832 (9th Cir. 1995).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 12

1  (Tr. at 59-60.)

2      The fact Dr. Lahtinen's reports were used for DSHS purposes

3  does not detract from his history as her primary care physician from

4  1999 through October 2003.  The ALJ also notes Dr. Lahtinen's

5  opinion in February 2002 Plaintiff was severely limited did not meet

6  the durational requirement because it was limited to 16-20 weeks.

7  (Tr. at 329.)  At the time of the ALJ's decision, that conclusion

8  was correct; however, new evidence before the Appeals Council

9  included an updated report from Dr. Lahtinen who opined in July 2003

10 that Plaintiff would be severely limited for an additional 16-20

11 weeks.  (Tr. at 32-33.)  Thus, combining the passage of time with

12 the additional 16-20 week projection,  duration was no longer a

13 valid reason for rejecting the opinion Plaintiff was severely

14 limited.

15     The ALJ also concluded Dr. Lahtinen did not support his opinion

16 with objective medical findings and tests.  It appears from the RFC

17 forms that Dr. Lahtinen attributed Plaintiff's impairments to

18 multiple conditions including osteoarthritis, bipolar disorder,

19 asthma, headaches and dizziness (February 2000); osteoarthritis,

20 bipolar disorder, asthma, and headaches (June 2000); osteoarthritis,

21 bipolar disorder, asthma and headaches / dizziness (March 2001); and

22 cervical spine flexion, Chiari Malformation status post surgery,

23 asthma or chronic obstructive pulmonary disease (COPD) and Type II

24 diabetes (July 2003). (Tr. at 32, 213, 215, 217.)  However, Dr.

25 Lahtinen's notes do not include objective findings to support these

26 diagnoses.

27     In January 2000, Dr. Britt noted Plaintiff's health was

28 generally good.  (Tr. at 305.)  There was some suspicion of pseudo-

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
ENTRY OF JUDGMENT FOR DEFENDANT - 13

seizures, a manifestation of psychiatric pathology.  In March 2000, Dr. Krueger noted depression was Plaintiff's chief complaint.  Her examination was otherwise essentially normal.  (Tr. at 302.) Diabetes was controlled with diet and asthma with medication.  Dr. Krueger concluded Plaintiff could perform medium work with some limitation of environmental triggers.

X-rays in May 2000 indicated a compression at C5 consistent with old trauma and degenerative changes.  (Tr. at 294-5.)  In September 2001, neurologist Dr. Britt indicated Plaintiff's condition with respect to headaches and numbness in her arms was "primarily a lifestyle and personality matter for her."  In March 2002, following a slip and fall on ice in December 2001, Dr. Britt noted Plaintiff was undergoing physical therapy for her neck and there was nothing else that could be offered. (Tr. at 372.) Physical therapy was discontinued on April 15, 2002, with some improvement in her condition.  (Tr. at 376.)  Thus, the ALJ did not err when he relied on Dr. Bostwick's testimony to conclude Plaintiff could perform light work.

CREDIBILITY OF LAY WITNESS

Plaintiff contends the ALJ did not properly evaluate the statement by her daughter, a lay witness at the hearing.  In his opinion, the ALJ noted Ms. Entwhistle has provided care for her mother for the past two years, including cooking, doing the laundry for her, monitoring her diet, medication and blood testing. (Tr. at 446.) She also stated she must check the condition of her feet because her mother is unable to feel them and that at times her mother trips over her feet.  The ALJ rejected this evidence, noting the close relationship between mother and daughter and that Ms.

Entwhistle's observations were not consistent with the medical record and findings by Drs. Toews and Bagby. (Tr. at 59.) Lay testimony can never establish disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Thus, the ALJ did not err when he rejected Ms. Entwhistle's testimony.

New Evidence

New evidence was submitted to the Appeals Council, including Dr. Lahtinen's second RFC finding Plaintiff was severely limited due to diabetes, COPD, status post Chiari malformation, and cervical spinal flexion. (Tr. at 32.) Also submitted was a psychological evaluation by Dalley Mahlon, Ph.D. and Brooke E. Sjostrom, M.S., dated July 16, 2003, diagnosing dysthymic disorder, personality disorder nos with borderline, schizotypal features, and borderline intellectual functioning. (Tr. at 35-36.) Certain marked and moderate limitations were noted and Plaintiff was described as "seriously disturbed" but her GAF was assessed at 60, indicative of only mild limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995).

During her mental health examination, Plaintiff was described as cooperative, pleasant and talkative with a preoccupation describing physical limitations. She maintained her attention and focus as to all tasks, exhibited average mental control, and had a good fund of knowledge. (Tr. at 40.) Trails A and B, testing organic brain impairment, were within normal range. Plaintiff was the care giver for five dogs and 11 cats, she performed basic

hygiene activities, dressed herself, ran the washer-dryer, used a telephone and played on the computer and internet. MMPI results indicated she was manipulative and passive / dependent. (Tr. at 41.)

New evidence also included an updated report from Dr. Lahtinen who opined in July 2003 that Plaintiff would be severely limited for an additional 16-20 weeks. (Tr. at 32-33.) However, there are no objective clinical findings to support that conclusion, other than cursory notes which are difficult to read but appear to be limited to non-emergent complaints and requests for lab results and DSHS paper work. (Tr. at 17-25.) Lab results indicated Plaintiff's diabetes was under control. (Tr. at 26, 27, 29.)

A remand to evaluate new evidence is warranted when the new evidence is material and the claimant has good cause for failing to produce the evidence earlier. 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001). The Appeals Council shall consider "new and material" evidence only if such evidence relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. S 404.970; *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991). Even assuming a showing of good cause, the new evidence is not material to a finding of disability on the current application which alleges an onset date of 1992 or under a changed circumstances standard following denial of Plaintiff's second application for benefits in 1998. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED**.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 16

2.  Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 18)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be **CLOSED** and judgment entered for Defendant.

DATED August 22, 2005.


_____s/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE